IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Terri L. Thomas,                :

    Plaintiff,               :

  v.                            :       Case No. 2:08-cv-0675

Michael J. Astrue,              :       JUDGE FROST
Commissioner of Social Security,        MAGISTRATE JUDGE KEMP
                                :
    Defendant.

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Terri L. Thomas, filed this action seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability benefits and supplemental security income benefits. Those applications, which were filed on August 27, 2003, alleged that plaintiff became disabled on August 1, 2003, as a result of Crohn's disease and depression.

After initial administrative denials of her claim, plaintiff was afforded a hearing before an Administrative Law Judge on August 14, 2007. In a decision dated September 20, 2007, the Administrative Law Judge denied benefits. That decision became the final decision of the Commissioner when the Appeals Council denied review on May 18, 2008.

Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this Court on October 2, 2008. Plaintiff filed her statement of errors on December 18, 2008. The Commissioner filed a response to the statement of errors on February 27, 2009. No reply brief has been filed, and the matter is now ripe for decision.

II. Plaintiff's Testimony

Plaintiff's testimony at the administrative hearing revealed

the following. Plaintiff testified that her biggest problem was watery stool. It occurred mostly in the morning, but seemed to clear up by mid-afternoon, depending on what she ate or drank. (Tr. 406-407). Plaintiff further testified that her need to use the restroom and be away from her work station had caused her to be fired from her last job. (Tr. 409). Plaintiff also testified that she did not believe that she could work because she would not stay at her work station long enough. (Tr. 411). Plaintiff testified that she loses control of her bowel or bladder two to three times a week. During a typical eight-hour period she would have to use the restroom four to five times and each visit would take ten to twenty minutes. (Tr. 417-18).

Plaintiff estimated that she was capable of lifting up to approximately 7-8 lbs. (Tr. 420). She believed she could stand and walk about 30 minutes to an hour. *Id.* Plaintiff testified that she could sit for 30 minutes. Plaintiff further testified that she spent about half the day laying on her left side. (Tr. 421). She also had difficulty sleeping. *Id.*

In her Statement of Errors, Plaintiff does not challenge the Commissioner's findings with respect to her alleged mental impairments. Accordingly, the Court will focus its review of the medical evidence on Plaintiff's alleged exertional impairments.

### III. The Medical Records

Pertinent medical records reveal the following. Plaintiff underwent an abdominal exploration with ileocolic resection, incision and drainage of an abscess, and removal of forty-two centimeters of terminal ileum in March 2001. (Tr. 123-68). A gastroenterologist, Dr. Conaway subsequently treated Plaintiff for Crohn's disease, from March 2002 through June 2003. (Tr. 169-78).

On December 22, 2003, plaintiff presented to Grant Riverside Methodist Hospital complaining of right lower quadrant pain and bowel changes. (Tr. 180-87). She was treated for an exacerbation of her Crohn's disease with diarrhea and blood and given intravenous Dilaudid and Phenergan. *Id.*

Plaintiff began seeing Dr. Quinn at the Ohio State University Digestive Disease Clinic in February 2004. (Tr. 205-13, 245-48). She reported that she was still having multiple bowel movements per day with blood and occasional abdominal pain. *Id.* Plaintiff underwent a colonoscopy on February 23, 2004, which showed inflammation, ulceration, small bowel anastomosis, and internal hemorrhoids. (Tr. 208-09). Dr. Quinn prescribed Pentasa and Aciphex. A small bowel follow through taken March 5, 2004 was unremarkable. (Tr. 213, 230).

On July 9, 2004, plaintiff informed Dr. Quinn that she felt much improved after taking the Pentasa, and had decreased blood per rectum with a bowel movement. (Tr. 221, 247). She also reported complete resolution of her reflux symptoms, except rarely with some foods. *Id.* Dr. Quinn reported that plaintiff seemed to have responded on Pentasa and continued her on the current dose. *Id.* On July 12, 2004, plaintiff reported some blood in her stools and increased diarrhea and he started her on forty milligrams per day of Prednisone. (Tr. 222).

On September 14, 2004, Dr. Quinn indicated that plaintiff had been tapering down on her Prednisone dose. She had been having normal bowel movements and only minimal abdominal discomfort. (Tr. 219, 246). She also had some intermittent reflux with certain foods, but otherwise that was controlled. *Id.*

In October 2004 and January 2005, Dr. Quinn noted that plaintiff's stool frequency had increased to six bowel movements a day, which were more loose and watery, since tapering off

Prednisone. (Tr. 217, 245). Dr. Quinn discussed the use of Imuran. *Id.*

On July 22, 2005, Dr. Quinn noted that plaintiff had about four loose bowel movements in the morning, and two to three loose bowel movements the rest of the day. (Tr. 307). Dr. Quinn placed plaintiff on Questran. *Id.*

Plaintiff underwent another colonoscopy in August 2005 which revealed mild erythema in the rectal vault and ulceration at ieocolonic anastomosis. (Tr. 311-12). Dr. Quinn diagnosed regional enteritis of the small intestine. *Id.*

Plaintiff was admitted to the Ohio State University Medical Center on October 8, 2005, secondary to vomiting, stool problem, and abdominal pain. (Tr. 261-96). Her nausea and vomiting symptoms improved dramatically with pain control and Phenergan. *Id.* Plaintiff was educated as to the importance of continuing to eat small meals at a time and not to overdo it. *Id.* CT Scan findings suggested chronic, low-grade partial obstruction at the level of the anastomosis. *Id.*

On October 13, 2005, plaintiff told Dr. Quinn that she had four to six bowel movements per day, but her pain was much better. (Tr. 306). In January 2006, Dr. Quinn noted that plaintiff had two to seven bowel movements per day. (Tr. 303, 305).

Plaintiff underwent a flexible sigmoidoscopy on March 27, 2006, which revealed diffuse area of moderately erythematous mucosa in rectum. (Tr. 308-09). Pathology was consistent with inactive, chronic inflammatory bowel disease. *Id.*

Plaintiff informed Dr. Quinn in May 2006 that she had gained some weight, and, after seeing a dietician and being informed of a low-residue diet, she noted a big difference in her symptoms. (Tr. 331-32). She also reported that her bowel movements were now formed occasionally. Dr. Quinn encouraged plaintiff to take

her Welchol every day prior to two of her largest meals and emphasized the importance of compliance with her Pentasa as well. *Id.* Dr. Quinn and plaintiff discussed her current functionality and plaintiff stated that she had frequent diarrheal stools especially in the morning and, as a result, had some perirectal discomfort and some joint discomfort and could not sit longer than thirty minutes and could not stand more than one hour. (Tr. 332).

On August 18, 2006, plaintiff reported to Dr. Quinn that she had frequent loose stools in the morning, which resolved during the course of the day. (Tr. 328). Plaintiff stated that she woke up early with fecal urgency, and generally had four to six loose bowel movements each morning. *Id.* She was not fully complaint with her medication, especially Welchol, which she took for bile salt diarrhea. *Id.* Plaintiff stated that she took it approximately twice per week, because the pills were too large to swallow. Dr. Quinn prescribed holestyramine. (Tr. 329, 330, 337).

Dr. Levine saw Plaintiff in follow-up for her gastrointestinal condition in October 2006. (Tr. 326-27). Plaintiff reported that she smoked cigarettes occasionally. Dr. Levine noted that plaintiff had some problems with diarrhea, that was probably bile salt-induced diarrhea, and she took Welchol for that, but did not take it on some days. *Id.* Dr. Levine indicated that plaintiff had four to six bowel movements in a day. *Id.*

Plaintiff was evaluated by Dr. Thomas, a gastroenterologist on March 1, 2007. (Tr. 354-55). Dr. Thomas noted that plaintiff's bowel movements could alternate between two a day and up to fifteen times a day if she has spicy food. *Id.* He observed that plaintiff's Crohn's disease seemed to be quiescent and continued her on Imuran and Pentasa. *Id.*

On June 14, 2007, plaintiff reported abdominal cramping and weight loss to Dr. Doran. (Tr. 351-53). He noted that plaintiff had four bowel movements in the morning, and then two to three at night; they were always within one half-hour or so of food ingestion. *Id.* She previously smoked one-half pack of cigarettes a day, but had decreased her smoking to one pack every week. Dr. Doran noted that plaintiff's current intermittent abdominal cramping and watery diarrhea sounded more like IBS (irritable bowel syndrome) from the stress of her daughter moving in. *Id.*

IV. <u>The Expert Testimony</u>

Dr. Slodki, a medical expert, testified at the administrative hearing. He noted that plaintiff should be able to perform light exertional work. (Tr. 423). Dr. Slodki noted that plaintiff's reported need for bathroom breaks was historical information, and not objective data. *Id.* Dr. Slodki noted the objective data that would result from severe diarrhea was electrolyte disturbance and extreme weight loss, which he did not see in the record. *Id.*

A vocational expert, Mr. Pagella also testified at the administrative hearing. He characterized plaintiff's past jobs as a receptionist, appointment setter, switchboard operator, telephone collector and cleaner. All jobs except for the cleaner were sedentary, semi-skilled work. The job as cleaner was light, unskilled work. (Tr. 426). The administrative law judge asked a series of hypothetical questions to determine whether jobs would exist in the national economy for an individual with the plaintiff's age, education, work experience who had colitis with access to a bathroom three times a day at regular intervals with the opportunity to change protective garments, and no work with the general public. *Id.* Mr. Pagella testified that such an individual could return to plaintiff's past jobs of collector and switchboard operator. (Tr. 427). Answering the second

hypothetical, Mr. Pagella testified that if plaintiff had to use the restroom five to thirteen times a day, up to twenty minutes at a time, there would be no work available. *Id.*

V. The Administrative Decision

Based on the above evidence, the Commissioner found that plaintiff suffered from severe impairments of Crohn's disease and residuals of cervical cancer. As a result of these impairments, plaintiff retained the residual functional capacity for light work, access to the bathroom three times/workday with opportunity to change protective garments, and no work with the public. These limitations did not preclude the plaintiff's performance of her past work as a collector and switchboard operator. As a result, she was found not to be disabled.

VI. Legal Analysis

In her Statement of Errors, plaintiff raises two issues. First, she asserts the Commissioner failed to give substantial weight to the opinions of her treating physicians when the Commissioner found that she needed access to a bathroom only three times per workday. Coupled with that claim is an assertion that the Commissioner, after finding plaintiff generally to be credible, "disregarded plaintiff's testimony as to frequency and length of bathroom use." Plaintiff's Statement of Errors, Doc. #15, at 9. Last, she contends that the Commissioner did not accurately describe her limitations to the vocational expert and therefore should not have relied on the vocational expert's testimony concerning jobs that plaintiff could perform. The underlying question is whether the Commissioner's decision is supported by substantial evidence. The Court reviews the Commissioner's decision under the following standard.

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary as to any

fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" *Id.* LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Secretary's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Secretary's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Secretary's decision must be affirmed so long as his determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff's contention that the Commissioner improperly disregarded the opinions of the various treating physicians is easily disposed of. As the Commissioner correctly points out, the statements in the reports of the doctors who treated her for Crohn's disease were not statements of opinions about her physical capabilities or her observable symptoms, but were simply recitations of information she provided to the doctors. As such, they were not entitled to be given either controlling or significant weight under 20 C.F.R. §404.1527. In fact, no doctor except Dr. Slodki commented on her physical capabilities, and he

-8-

expressed no opinion about the frequency or duration of her bowel movements. As he stated, frequent trips to the bathroom are "consistent with her diagnosis," but, like pain, the "need to go to the bathroom" is something that "you can't see under the microscope." (Tr. 423). He did note that the record contained no findings indicative of "severe diarrhea" such as electrolyte disturbance and extreme weight loss, but he was not asked how often a person with "severe diarrhea" might have to use the bathroom during a work day, nor whether he believed that in the absence of such findings, plaintiff was exaggerating her need to frequent the bathroom. Thus, the issue of the number and duration of plaintiff's bathroom breaks could not have been resolved on the basis of the medical evidence or testimony alone, but is very much an issue of the plaintiff's credibility.

The standards for an ALJ's evaluation of a claimant's credibility are set forth in Social Security Ruling 96-7p. That ruling states that, in the administrative decision, the ALJ "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." This Ruling "was designed to prevent ALJs from making adverse credibility determinations unsupported by substantial evidence or premised on flawed logic." Lawson v. Astrue, 2008 WL 4066094 (E.D. Tenn. August 27, 2008), citing Indoranto v. Barnhart, 374 F.3d 470, 474-75 (7th Cir. 2004). Although this Court is required to give considerable deference to credibility determinations made by the Commissioner, see generally Franson v. Commissioner, 556 F.Supp. 2d 716, 726-27 (W.D. Mich. 2008), there must be some articulated rationale in the administrative decision which the Court can review. See Rogers v. Commissioner, 486 F.3d 234, 248 (6th Cir. 2007) ("blanket assertions that the claimant is not believable will not pass muster, nor will explanations as

to credibility which are not consistent with the entire record and the weight of the relevant evidence"). Especially in cases "where subjective ... complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important." Id., citing Hurst v. Secretary of HHS, 753 F.2d 517, 519 (6th Cir. 1985).

The Commissioner's memorandum, filed in this Court, provides a lengthy discussion, replete with references to the administrative record, about why the ALJ *might* have concluded that plaintiff's description of her symptoms was not fully credible. The problem is, of course, that the actual administrative decision contains *none* of that discussion. In fact, the only statement in that decision about the plaintiff's credibility reads in full as follows: "In making this assessment [of plaintiff's need to use the bathroom only three times during a work day], I considered all symptoms in accordance with the requirements of 20 CFR §§404.1529 and SSRs 96-4p and 96-7p. I find she is generally credible." (Tr. 19). Obviously, the ALJ did not find plaintiff to be completely credible, since her testimony about more frequent and lengthier bathroom breaks, and her statements to her physicians, were discounted, but the decision provides absolutely no explanation for such discounting. There is also no explanation for the ALJ's choice of three as the correct number of bathroom breaks per eight-hour work day. No witness so testified, and no exhibit so states. Without any rationale for what are essentially the determinative factors supporting the decision to deny benefits, the Court has nothing to review. Thus, a remand for compliance with the applicable law, including the articulation of a rationale both for the Commissioner's decision to afford plaintiff's testimony and statements less than full credibility, and the basis for

concluding that she can consistently make it through an eight-hour work day with only three bathroom breaks, is required.

### VII.  Recommended Disposition

For the foregoing reasons, it is recommended that the plaintiff's statement of errors be sustained and that this case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

### VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp  
United States Magistrate Judge